**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SEGA CORPORATION and SEGA OF AMERICA, INC., | Case No. 23-cv-02539 |
| Plaintiffs, | |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## COMPLAINT

Plaintiffs Sega Corporation and Sega of America, Inc. (collectively, "Sega" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I.     JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over Sega's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the

United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, offer for sale and/or sell products using infringing and counterfeit versions of Sega's federally registered trademarks and/or unauthorized copies of Sega's federally registered copyrighted works (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Sega substantial injury in the state of Illinois.

## II.     INTRODUCTION

3.     Sega filed this case to prevent e-commerce store operators who trade upon Sega's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Sega's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Sega is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the internet. Sega has been, and continues to be, irreparably damaged through consumer confusion

and dilution of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary relief.

## III.    THE PARTIES

4.    Plaintiff Sega Corporation is a Japanese corporation having its principal place of business at Sumitomo Fudosan Osaki Garden Tower, 1-1-1 Nishi-Shinagawa-ku, Tokyo 141-0033, Japan.  Plaintiff Sega of America, Inc. is a California corporation having its principal place of business at 6400 Oak Canyon, Suite 100, Irvine, California 92618. Plaintiffs are wholly owned subsidiaries of Sega Sammy Holdings, Inc., a publicly traded company on the Tokyo Stock Exchange.  Sega Corporation and/or Sega of America, Inc. own the trademarks and copyrights asserted in this action.  Plaintiff Sega Corporation, Plaintiff Sega of America, Inc. and Sega Sammy Holdings, Inc. are referred to herein together or individually as "Sega."

5.    Sega is a multinational video game, entertainment, and animation company, as well as a former manufacturer of home computers and video game consoles. Sega has developed and manufactured numerous video game consoles, including the famous video game consoles Sega Genesis and Sega Dreamcast, and also provides software as a third-party developer.  Known as one of the most iconic developers in the video game industry, Sega has successfully developed and launched multiple video game franchises including *Sonic the Hedgehog*.

6.    Sonic the Hedgehog, pictured below, is Sega's most famous video game character. Since the 1991 release of the first *Sonic the Hedgehog* game, the *Sonic the Hedgehog* video game series has gained worldwide popularity, with Sega generating at least 1.38 billion downloads of the series to date.  The *Sonic the Hedgehog* video game series includes *Sonic the Hedgehog*, *Sonic the Hedgehog 2*, *Sonic Chaos*, *Sonic Mania*, and many others. In addition to the *Sonic the Hedgehog* video game series, Sega has developed a variety of Sonic the Hedgehog initiatives

globally, including movies, animation, music, and merchandising. Some of the characters and character names made famous by the Sonic the Hedgehog franchise include, but are not limited to:[1]

| | |
|---|---|
| **Sonic the Hedgehog** |  |
| **Miles "Tails" Prower** |  |
| **Knuckles the Echidna** |  |

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Sega's copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Sega's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Shadow the Hedgehog** |  |
| **Dr. Robotnik/ Dr. Eggman** | |
| **Jet the Hawk** | |
| **Silver the Hedgehog** | |

| | |
|---|---|
| **Amy Rose** |  |
| **Metal Sonic** |  |
| **Chao** |  |
| **Rogue the Bat** |  |

| | |
|---|---|
| **Blaze the Cat** |  |
| **Big the Cat** | |
| **Tangle the Lemur** | |
| **Cream the Rabbit** | |

7. Since the release of the first *Sonic the Hedgehog* game in 1991, Sega has released twenty-five *Sonic the Hedgehog* video games and has developed numerous spin-off TV shows,

comic books, and movies. In 2020, Sega partnered with Paramount Pictures Corporation to produce the feature film *Sonic The Hedgehog*. The movie grossed nearly $320 million worldwide and became the domestic top-grossing video game adaptation film at the time. A second film, *Sonic the Hedgehog 2*, was released in 2022.



*Figure 1*

8.      Before Defendants' acts described herein, Sega launched the *Sonic the Hedgehog* video game franchise and its related line of products bearing its famous SONIC THE HEDGEHOG mark. Sega has also registered a multitude of works related to the Sonic the Hedgehog franchise and the characters embodied therein with the United States Copyright Office, including at least: (1) episodes of animated television shows based on the *Sonic the Hedgehog* video game series, including *Adventures of Sonic the Hedgehog* and *Sonic Boom*; (2) *Sonic the Hedgehog* video games; (3) *Sonic the Hedgehog* comic books; and (4) the two *Sonic the Hedgehog* films produced in 2020 and 2022, respectively (the "Sega Copyrighted Works").

9.      In 2019, Sega released the Sega Genesis Mini – a slick, miniaturized version of its famous Genesis video game console that was first released in the 1980s.[2] The Genesis Mini,

---

[2] *See* https://genesismini.sega.com/.

designed to be ready to plug and play right out of the box, comes pre-loaded with 40 legendary Genesis games, including *Sonic the Hedgehog*, *Sonic the Hedgehog 2*, *Tetris*, and *Gunstar Heroes*. Due to the success of the Sega Genesis Mini, Sega released the Sega Genesis Mini 2 in October, 2022.[3] The Sega Genesis Mini 2 is based on the Sega Genesis Model 2, a smaller version of the original Sega Genesis that was released in 1994.

10. Sega markets and sells a variety of products, including video games and video game consoles; accessories like key chains; backpacks; face masks; cell phone covers; apparel including t-shirts and sweatshirts; household items such as water bottles, mugs, blankets, and pillows; and other collectibles such as plush toys, comics, and toys (collectively, "Sega Products").

11. Sega Products have become enormously popular and even iconic, driven by Sega's quality standards and innovative designs. Among the purchasing public, Sega Products are instantly recognizable as such. The Sega and Sonic the Hedgehog brands (hereinafter collectively referred to as the "Sega Brand") have become global successes and Sega Products are among the most recognizable in the world. Sega Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Amazon, Old Navy, Target, Walmart, Best Buy, GameStop, and Kohls, and through the official shop.sega.com website.

12. Sega has used the SEGA and SONIC THE HEDGEHOG trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Sega Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the Sega Trademarks. Sega's use of the marks has also built substantial goodwill in the Sega Trademarks. The Sega Trademarks are famous marks and valuable assets of

---

[3] *See* https://sega.jp/genesismini2/.

Sega. Sega Products typically include at least one of the Sega Trademarks and/or Sega Copyrighted Works.

13. The Sega Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 3,009,472 | SONIC THE HEDGEHOG | Oct. 25, 2005 | For: Video game software in class 009. |
| 4,673,369 | SONIC THE HEDGEHOG | Jan. 20, 2015 | For: Precious metals; key rings of precious metals; trophies of precious metals; commemorative shields of precious metals; none-monetary coins; personal ornaments of precious metals; badges of precious metal; ornamental pins; wristwatches; watches; clocks in class 014.<br><br>For: Industrial packaging containers of paper; printed matter, namely, books, magazines and newsletters featuring animation, video games, computer games, arcade games, board games and card games; calendars; posters; comic books; paper and cardboard; stickers stationery; note books; stationery; photographs; photograph stands; banners of paper; flags of paper; towels of paper; handkerchiefs of paper in class 016.<br><br>For: Bags and the like, namely, handbags, school bags, backpacks, traveling bags, attaché bags, bags of leather for packaging, luggage of leather, shoulder bags, carry-on |

| | | | bags, rucksacks, courier bags, messenger bags, trainer bags, sports bags; pouches and the like, namely, vinyl and canvas pouches, pouches of leather, pouches of textile; card cases, namely, credit card cases, business card cases, name card cases; key cases; purses; wallets; umbrellas; clothing for pets; unfitted vanity cases in class 018.<br><br>For: Furniture; bedding, except linen, namely, mattresses and box springs; cushions; pillows; drinking straws; non-electric fans for personal use; indoor window blinds; bead curtains for decoration; benches; picture frames in class 020.<br><br>For: Tableware other than knives forks and spoons, namely, plates, cup and saucers; utensils for household purpose, namely, pot and pan scrapers, rolling pins, spatulas, turners, whisks, bottles, sold empty, bowls, lunch boxes; piggy banks, not of metal; cosmetic utensils, namely cosmetic brushes, tooth brushes and dental floss in class 021.<br><br>For: Curtains; table cloths of textile; linen for household purposes; towels; handkerchiefs; quilts; quilt covers; pillowcases; bed blankets; serviettes of textile; labels of cloth in class 024.<br><br>For: Clothing, namely, t-Shirts, |
|---|---|---|---|

| | | | shirts, pants, jeans, jackets, coats, dresses, skirts, socks, gloves as clothing, vests, underwear, anoraks, rain wear, wind resistant jackets, sweatshirts, tank tops, pullovers, sweaters, knit shirts, cardigans, belts, parkas, mufflers, fleece pullovers, head wear, pajamas; clothes for sports, namely, pants, sports over uniforms, jerseys, shirts, coats, jackets, swim wears, bathing suits; shoes; boots; footwear for sports in class 025.<br><br>For: Amusement game machines and coin-operated amusement machines for use in amusement parks; toys for domestic pets; toys, namely, electronic action toys, inflatable toys, mechanical action toys and parts therefore, toy masks, puzzles, toy building blocks, board games; action figures; electronic action toys; dolls; stuffed toys; playing cards; billiard equipment; darts; sports equipment, namely, baseball gloves, baseballs, softballs, rubber baseballs, batting gloves, baseball backstops, baseball bats, baseball bat cases, baseball bases, catchers' masks, baseball mitts, chest protectors for baseball, skipping ropes, yoga mats, head covers for golf clubs, golf bags, exercise balls, in-line skates, skateboards, roller blades, balls for games, basketball hoops; basketball nets; basketball backboards; tennis rackets in class 028. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | For: Tea; coffee and cocoa; confectionery made of sugar; bread and buns; pancakes; ice cream; chocolate; cookies; popcorn; sandwiches; sushi; hamburgers sandwiches; pizzas; hot dogs; ice cream mixes; sherbet mixes; oat flakes; oatmeal; corn flakes; spaghetti; macaroni; almond paste in class 030.<br><br>For: Beer; carbonated soft drinks; non-alcoholic fruit juice beverages; whey beverages; vegetable juices; non-alcoholic beverages, namely, fruit-flavored soft drinks and soda water, cola-flavored soft drinks, and lemonade in class 032. |
| 6,358,553 | SONIC THE HEDGEHOG | May 25, 2021 | For: Recorded videotapes and videodiscs featuring animation, action, adventure and comedy films; downloadable films and movies featuring animation, action, adventure and comedy provided via a video-on-demand service; motion picture films featuring animation, action, adventure and comedy; downloadable graphics for computers, video game machines and mobile phones featuring scenes and characters based on animated cartoons, computer games and video games; electronic publications, namely, downloadable electronic books and magazines in the field of motion pictures, cartoons, music, computer games and video games; phonograph records featuring music; downloadable music files via a |

| | | | global computer network and wireless devices; recorded compact discs featuring music, video game sounds and dialogues; compact discs, prerecorded audio tapes, and downloadable files featuring musical sound recordings; mobile phone straps; protective cases for cell phones; downloadable computer game programs; recorded computer game programs; downloadable computer game software; recorded computer game software; downloadable video game software; recorded video game software; downloadable video game programs; recorded video game programs; video game discs and cartridges; downloadable computer game software for use on mobile and cellular phones in class 009. |
|---|---|---|---|
| 5,268,608 | SONIC MANIA | Aug. 22, 2017 | For: Computer game programs; computer game software; video game software; video game programs; video game discs and video game cartridges; computer game software for use on mobile and cellular phones; mobile phone straps; protective cases for cell phones; downloadable graphics, images and moving images for computers, video game machines or mobile phones featuring scenes and characters based on computer and video games; downloadable computer and video game software; downloadable music files via a global computer network and wireless devices; sound recorded compact discs featuring music, |

| | | | |
|---|---|---|---|
| | | | video game sounds and dialogues; musical sound recordings; prerecorded video discs and tapes featuring music, comedy, drama, action, adventure and animation; electronic publications, namely, downloadable books and magazine s in the field of computer games, video games, cartoons and music; phonograph records featuring music in class 009.<br><br>For: Entertainment services, namely, providing on-line video games and on-line computer games; providing amusement facilities; providing amusement arcade services; providing amusement parks; organization, production and presentation of video and computer game contests and tournaments in class 041. |
| 5,619,845 | SONIC BOOM | Dec. 4, 2018 | For: Computer game programs for home video consoles; electronic circuits, magnetic computer tapes and disks, optical disks, ROM cartridges and other recording media, namely, computer cartridges and computer cassettes, all containing video game programs for use with home video game consoles; electronic circuits, magnetic computer tapes and disks, optical disks, ROM cartridges and other recording media, namely, computer cartridges and computer cassettes, all containing video game programs for use with hand-held games with liquid crystal displays; video game software for home |

| | | | | video game consoles; telecommunication machines and apparatus, namely, cellular phones and mobile phones; straps for mobile phones; computers; computer game programs; electronic circuits, magnetic computer tapes and disks, optical disks, ROM cartridges containing computer game programs; computer software for children's education; computer application software for mobile phones, namely, game software; computer game software; computer software for computer system management; computer programs for arcade video game machines; electronic circuits, magnetic computer tapes and disks, optical disks, ROM cartridges and other recording media, namely, computer cartridges and cassettes, all containing video game programs for use with arcade video game machines; game software for arcade video game machines; video game program; video game software; phonograph records featuring music; downloadable music files; downloadable music files for mobile telephones and tablet computers; recorded compact discs featuring music, animated cartoons; downloadable image files in the field of computer games, video games and animated cartoons; downloadable image files, namely, downloadable moving image files for mobile terminals, in the field of |
|---|---|---|---|

| | | | computer games, video games and animated cartoons; recorded video discs and video tapes featuring movies, cartoons, video games; videotapes and videodiscs recorded with animation; downloadable electronic publications, namely, books, comic books, magazines and manuals featuring computer games, video games and animated cartoons in class 009.<br><br>For: Pastes and other adhesives for stationery or household purposes; hygienic hand towels of paper, namely, wet tissue; paper towels; table napkins of paper; hand towels of paper; handkerchiefs of paper; stationery; seals; stickers; printed matter, namely, comic books, video game instruction manuals, children's books, children's activity books, songbooks, children's magazines, magazines and pamphlets featuring information and articles about fashion and games; pictorial prints; picture books; catalogues in the field of computer games, video games and animated cartoons; calendars; trading cards; paintings and calligraphic works; printed photographs; photograph stands in class 016.<br><br>For: Clothing for domestic pets; bags, namely, athletic bags, all-purpose sports bags and beach bags; pouches, namely, felt pouches, leather pouches and key |
|---|---|---|---|

pouches; Boston bags; rucksacks; card cases, namely, credit card cases, name card cases and game card cases; key cases; purses; commutation-ticket holders, namely, wallets, document cases, ticket pouches; business card cases; unfitted vanity cases sold empty; umbrellas and their parts; walking sticks; canes; metal parts of canes and walking-sticks; walking cane handles and walking stick handles; saddlery in class 018.

For: Non-metal locks; cushions; Japanese floor cushions (zabuton); pillows; mattresses; nameplates and door nameplates, not of metal; hand-held flat fans; hand-held folding fans; furniture; wind chimes; plastic keychains with a small doll attached; plastic key tags with a small doll attached in class 020.

For: Plastic handheld shopping baskets; cosmetic and toilet utensils; toothbrushes; hair brushes; toilet cases, namely, toilet brush holder; kitchen utensils, namely, batter dispenser, grill covers, barbeque branders and grates; kitchen containers, namely, kitchen containers, containers for household or kitchen user of precious metal and non-electric kitchen containers not made of precious metal; non-electric cooking pots and pans; non-electric coffee-pots; Japanese cast iron kettles, non-electric (tetsubin);

| | | | non-electric kettles; tableware, other than knives, forks and spoons, namely, coffee services, tea services; drinking cups; dishes; Japanese rice bowls (chawan); lunch boxes; Japanese style tea cups (yunomi); Japanese style soup serving bowls (wan); non-electric portable coldboxes; rice chests; food preserving jars of glass; drinking flasks; vacuum bottles; piggy banks in class 021.<br><br>For: Towels; Japanese cotton towels (tenugui); handkerchiefs; mosquito nets; bedsheets; futon quilts; fitted futon covers not of paper, unfitted futon covers not of paper; quilt covers; futon ticksticks, namely, unstuffed futon covers not of paper; pillowcases; blankets, namely, lap blankets, bed blankets and baby blankets; table napkins of textile; dish cloths; shower curtains; banners and flags of textile; seat covers of textile, namely, fitted toilet seat covers of textile, unfitted seat covers of textile; wall hangings of textile; curtains; table cloths not of paper; draperies in the nature of thick drop curtains in class 024.<br><br>For: Lottery tickets; amusement game machines and apparatus, namely, coin-operated amusement machines for use in amusement parks; arcade video game machines other than for use with television receivers; coin, card or counter operated electronic arcade-type |
|---|---|---|---|

| | | | video games and amusement apparatus adapted for use with an external display screen or monitor, amusement apparatus incorporating a video monitor; arcade medal redemption game machines, namely, arcade redemption game machines which dispenses tickets or the like to successful players; arcade ticket redemption game machines, namely, arcade redemption game machines which dispenses tickets or the like to successful players; arcade game machines other than for use with television receivers; coin, card or counter operated electronic arcade-type video games and amusement apparatus, namely, amusement apparatus adapted for use with an external display screen or monitor; fairground ride apparatus, namely, amusement park rides; home video game machines; hand-held games with liquid crystal displays; toys, namely, rubber character toys, plastic character toys, wooden character toys, electronic character toys, educational character toys, party favors in the nature of small toys; squeeze toys; dolls; stuffed toys; action figures; puzzles; jigsaw puzzles; cards, namely, game cards; trading card games; go games; Japanese playing cards, namely, utagaruta; Japanese chess (shogi games); dice; Japanese dice games (sugoroku); dice cups; Chinese checkers as games; chess games; checkers; checker sets; conjuring |
| --- | --- | --- | --- |

| | | | apparatus, namely, magic tricks; dominoes; playing cards; Japanese playing cards (hanafuda); mah-jong; game machines and apparatus, namely, coin-operated video games; billiard equipment; darts equipment, namely, darts, dart shafts, dart boards; digital darts equipment, namely, electronic dart game; slot machines; sports equipment, namely, baseball bats, baseball gloves and baseball batting helmets, soccer balls, basketballs, hockey skates, skis in class 028.

For: Tea; coffee; cocoa; confectionery, namely, confectionery made of sugar, confectionery, namely, pastilles, fondants, fruit jellies candy, chocolate, popcorn and chewing gum; bread and buns; sandwiches; steamed buns stuffed with minced meat (niku-manjuh); hamburger sandwiches; pizzas; hot dog sandwiches; meat pies; ice cream; pasta, macaroni, oatmeal, flakes, namely, corn flakes, oat flakes, maize flakes; pastry; bread; Chinese stuffed dumplings (gyoza, cooked); Chinese steamed dumplings (shumai, cooked); sushi; fried balls of batter mix with small pieces of octopus, namely, takoyaki; boxed lunches consisting primarily of rice, with added meat, fish or vegetables; ravioli; instant confectionery mixes, namely, instant pudding mix, cake mixes, sherbet mixes and ice cream mixes; crepes; pasta sauce; biscuits; |
|---|---|---|---|

| | | | | cookies in class 030. |
| --- | --- | --- | --- | --- |
| | | | | For: Carbonated drinks, namely, carbonated soft drinks; fruit juices; vegetable juices; whey beverages in class 032. |
| | | | | For: Providing non-downloadable electronic publications in the nature of magazines, newsletters, picture books and comic books in the field of computer games, video games and animated cartoons; services of reference libraries for literature and documentary records; book rental; providing on-line electronic publications via internet or database including websites in the nature of magazines, news letters, picture books and comic books in the field of computer games, video games and animated cartoons; planning or arrangement of showing movies, live show performances, plays or musical performances; movie showing, movie film production, or movie film distribution; providing on-line images, movies, moving images and graphics in the field of computer games, video games and animated cartoons; providing on-line images, movies, moving images and graphics by computer terminals or mobile phones; entertainment in the form of non-downloadable images relating to fictional characters from books, animation, toys and games; direction or presentation of plays; providing on-line music, not |

| | | | |
|---|---|---|---|
| | | | downloadable, via computer terminals or mobile phones; organization of game tournaments; entertainment services, namely, providing amusement park rides in the nature of bumper car ride and roller coaster ride; providing amusement facilities; providing amusement arcade services; providing amusement parks; providing on-line video games; providing on-line board games; providing on-line quizzes; providing information relating to on-line computer games; providing on-line computer games; providing information relating to providing on-line computer games; providing information, in websites offering on-line video games, consisting of the game scores achieved by players of the games on the website and the rankings of such players based on those scores; production of radio or television programs; television entertainment, namely, a continuing animated cartoons, variety, news, comedy show broadcast over television; production of radio and television programs; radio entertainment, namely, a continuing animated cartoons, variety, news, comedy show broadcast over the radio, radio entertainment production in class 041. |
| 6,187,305 | SONIC RACING | Nov. 3, 2020 | For: Downloadable computer game programs; recorded computer game programs; downloadable computer game software; recorded computer |

|  |  |  | game software; downloadable video game software; recorded video game software; downloadable video game programs; recorded video game programs; video game discs and cartridges; downloadable computer game software for use on mobile and cellular phones; mobile phone straps; protective cases for cell phones; downloadable graphics, images and moving images for computers, video game machines or mobile phones featuring scenes and characters based on computer and video games; downloadable computer game and video game software; downloadable music files via a global computer network and wireless devices; sound recorded compact discs featuring music, video game sounds and dialogues; compact discs, magnetic tapes, and downloadable files featuring musical sound recordings; prerecorded video discs and tapes featuring music, comedy, drama, action, adventure and animation; electronic publications, namely, downloadable books and magazines in the field of computer games, video games, cartoons and music; phonograph records featuring music in class 009.<br><br>For: Entertainment services, namely, providing on-line video games and on-line computer games; providing entertainment information on on-line games; |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| | | | providing non-downloadable on-line computer graphics, moving images and images featuring scenes and characters based on computer and video games by computer networks, video game machines or mobile phones; providing amusement facilities; providing amusement arcade services; providing amusement parks; organization, production and presentation of video and computer game contests and tournaments; providing entertainment information about amusement facilities; providing on-line music, not downloadable in class 041. |
| 7,002,602 | SONIC PRIME | Mar. 21, 2023 | For: Downloadable computer game programs; recorded computer game programs; downloadable computer game software; recorded computer game software; downloadable video game software; recorded video game software; downloadable video game programs; recorded video game programs; video game discs and cartridges; downloadable computer game software for use on mobile and cellular phones; mobile phone straps; protective cases for cell phones; downloadable graphics, images, and video recordings for computers, video game machines and mobile phones featuring scenes and characters based on computer and video games; downloadable computer game and video game software; downloadable music files via a global computer network and |

|  |  |  | wireless devices; sound recordings recorded on compact discs featuring music, video game sounds and dialogues; prerecorded compact discs, magnetic audio tapes, and downloadable files featuring music; prerecorded video discs and magnetic audio tapes featuring music, comedy, drama, action, adventure and animation; electronic publications, namely, downloadable books and magazines in the field of computer games, video games, cartoons and music; phonograph records featuring music; animated cartoons, namely, videotapes and videodiscs recorded with animation; downloadable electronic publications in the nature of books, manuals, catalogs, pamphlets, and magazines in the field of computer games, video games, cartoons and music; pedometers; scales; bathroom scales in class 009.<br><br>For: Pastes and other adhesives for stationery or household purposes; hygienic hand towels of paper; towels of paper; table napkins of paper; hand towels of paper; handkerchiefs of paper; stationery; seals being stationery; stickers being stationery; blank notepads; decorative stickers for portable game machines; printed instruction manuals in the field of computer games, video games, cartoons and music; printed picture books; printed reference books in the field of computer games, video games, |
|---|---|---|---|

cartoons and music; printed catalogues in the field of computer games, video games, cartoons and music; printed calendars; printed magazine publications in the field of computer games, video games, cartoons and music; printed books in the field of computer games, video games, cartoons and music; printed pamphlets in the field of computer games, video games, cartoons and music; printed trading cards, other than for games; printed game hint books and manuals; printed photographs; photograph stands in class 016.

For: Clothing for domestic pets; bags, namely, carry-on bags; shoulder bags; school bags; traveling bags; pouches of leather; boston bags; rucksacks; key cases; wallets; credit card cases; vanity cases, not fitted; umbrellas and their parts; walking sticks; canes; metal parts of canes and walking-sticks; handles for canes and walking-sticks; saddlery in class 018.

For: Clothing, namely, t-shirts, shirts, sweaters, sweatshirts, jackets, pajamas, coats, swimwear, mufflers, gloves, scarves, neck ties, socks, underwear, pants, jeans, shorts, skirts, underpants, robes; footwear; beach shoes; boots; galoshes; half-boots; lace boots; sandals; sneakers; shoes; sports shoes; wooden shoes; high-heeled shoes; masquerade costumes; play

| | | | costumes¿ namely, costumes for use in children's dress up play, costumes for use in role-playing games; clothes for sports namely, sports jerseys and breeches for sports; boots for sports; headwear, namely hats and caps in class 025.<br><br>For: Toy vehicles; dolls; plush dolls; stuffed toys; toy action figures; toy for pets; toy jewelry; bath toys; electronic action toys; plastic character toys; children's educational toys for developing cognitive skills; construction toys; puzzles; children's multiple activity toys; toy building sets comprised of toy building blocks; novelty toy face masks; trading card games; playing cards; coin-operated video games; arcade game machines; arcade video game machines; amusement game machines with built-in screens; arcade redemption game machines which dispense tickets or tokens to successful players; arcade crane game machines which dispense tickets or tokens to successful players in class 028.<br><br>For: Tea; prepared coffee and coffee-based beverages; prepared cocoa and cocoa-based beverages; almond confectionery, namely, cookies; chocolate confectionery; confectionery fondants; confectionery fruit jellies, namely, fruit jelly candy; confectionery fruit pastes for flavouring of food; |
|---|---|---|---|

|  |  |  | peanut confectionery, namely, peanut brittle and peanut butter confectionery chips; fruit-based confectionery, namely, hollow candy forms filled with fruit; bread and buns; sandwiches; steamed buns stuffed with minced meat; hamburger sandwiches; pizzas; hot dog sandwiches; meat pies; ice cream; cereal preparations¿, namely, cereal-based snack bars; Chinese stuffed dumplings; Chinese steamed dumplings; sushi; pre-packaged boxed lunches consisting of rice, with added meat, fish or vegetables; ravioli; instant confectionery mixes¿, namely, cappuccino mixes, hot chocolate mixes, cocoa mixes, cake mixes, cookie mixes, pastry mixes, crepe mixes, mixes for bakery goods, biscuit mixes, instant pudding mixes, mixes for candy making, frosting mixes, frozen yogurt mixes, pre-processed mixes for making non-dairy frozen confections; crepes; pasta sauce; biscuits; cookies in class 030.<br><br>For: Entertainment services, namely, providing on-line video games and on-line computer games; providing information on on-line games; providing non-downloadable on-line computer graphics, videos and images featuring scenes and characters based on computer and video games by computer networks, video game machines or mobile phones; |
|---|---|---|---|

| | | | providing amusement facilities; organization, production and presentation of video and computer game events; arranging and conducting of video game and computer game events for entertainment purposes; organization or arrangement of game tournaments; providing information about amusement facilities; providing on-line music, not downloadable; providing electronic publications in the nature of books, manuals, catalogs, pamphlets, and magazines in the field of computer games, video games, cartoons and music; services of reference libraries for literature and documentary records; book rental; planning, management or arrangement of showing movies, theatrical shows, plays or musical performances; providing information relating to planning, management or arrangement of showing movies, theatrical shows, plays or musical performances; movie showing, movie film production, or movie film distribution; providing information relating to providing on-line graphics, movies showing, moving images, images, music and publishing of electronic publications; providing on-line graphics, movies showing, moving images, images, music and text information by computer terminals or mobile phones; providing information relating to providing |
|---|---|---|---|

<table>
<tr>
<td></td>
<td></td>
<td></td>
<td>on-line graphics, movies showing, moving images, images, music and publishing of electronic publications by computer terminals or mobile phones; providing on-line graphic novels, not downloadable, relating to characters of books, animated cartoons, toys, games; images showing; presentation of live show performances; direction or presentation of theatrical plays; presentation of musical performances; on-line presentation of shows, theatrical plays or musical performances; providing information relating to on-line presentation of shows, theatrical plays or musical performances; provision of shows, theatrical plays or musical performances by computer terminals or mobile phones; providing information relating to provision of shows, theatrical plays or musical performances by computer terminals or mobile phones; production of theatrical shows; production of live theatrical and musical shows; presentation of musical performances, direction or presentation of theatrical plays and presentation of musical performances provided on-line from a computer network; production of moving images and music using the internet via streaming; production of moving images and music relating to animated cartoons using the internet via streaming; on-line production of</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| | | | radio or television programs; production of radio or television programs and production of broadcast programs, using computer graphics; directing of radio and television programs; providing information relating to direction of radio and television programs; organization of sporting events; providing sports information; organization and provision of games and competitions via the internet; organization, arranging and conducting of computer game and video game tournaments; organization, arranging and conducting of photo sessions; providing information relating to sports and sporting events; organizing and conducting of sporting and cultural events; rental of game machines and apparatus; providing exercise facilities; rental of sports equipment; photography in class 041. |
| 6,263,485 | TEAM SONIC RACING | Feb. 9, 2021 | For: Downloadable computer game programs; recorded computer game programs; downloadable computer game software; recorded computer game software; downloadable video game software; recorded video game software; downloadable video game programs; recorded video game programs; video game discs and cartridges; downloadable computer game software for use on mobile and cellular phones; downloadable computer game and video game software in class 009. |

| | | | For: Pastes and other adhesives for stationery or household purposes; hygienic hand towels of paper; table napkins of paper; hand towels of paper; handkerchiefs of paper; stationery; stickers; printed matter, namely, comic books, instruction manuals in the field of computer games and video games, children's books, children's activity books, songbooks, children's magazines and magazines in the field of computer games, video games, cartoons and music; picture books, reference books in the field of computer games, video games, cartoons and music; catalogues in the field of computer games, video games, cartoons and music; calendars; general feature magazines in the field of computer games, video games, cartoons and music; books, namely, coloring books, date books; pamphlets in the field of computer games, video games, cartoons and music; trading cards other than for games; printed instructional and teaching material in the field of computer games, video games, cartoons and music; photographs; photograph stands in class 016.

For: Clothing, namely, t-shirts, shirts, sweaters, sweatshirts, jackets, pajamas, coats, swimwear, mufflers as neck scarves, gloves, scarves, neck ties, socks, underwear, pants, jeans, shorts, |

| | | | | skirts, underpants, robes; shoes; boots; footwear; beach shoes; galoshes; half-boots; lace boots; sandals; sneaker; sports shoes; wooden shoes; heels, namely, high-heel shoes; masquerade costumes; play costumes, namely, costumes for use in children's dress up play, costumes for use in role-playing games; clothes for sports, namely, sports jerseys and breeches for sports; boots for sports; headwear, namely, hats and caps in class 025.<br><br>For: Coin-operated video games; arcade game machines; arcade video game machines; amusement game machines with built-in screens; toy vehicles; dolls; stuffed toys; toy action figures; trading card games; playing cards; arcade redemption game machines which dispense tickets or tokens to successful players; arcade crane game machines which dispense tickets or tokens to successful players; gaming machines, namely, slot machines in class 028.<br><br>For: Tea; prepared coffee and coffee-based beverages; prepared cocoa and cocoa-based beverages; almond confectionery, namely, almond cookies, chocolate confectionery, namely, chocolate mousses, chocolate cakes and chocolate chips, confectionery fondants, namely, rolled fondant, confectionery fruits jellies, namely, fruit jelly candy, confectionery |

| | | | |
|---|---|---|---|
| | | | fruits pastes, namely, fruit paste for flavoring of food, peanut confectionery, namely, peanut brittle and peanut butter confectionery chips, fruits-based confectionery, namely, fruit coulis, fruit turnovers and fruit cobblers; bread and buns; sandwiches; hamburgers sandwiches; pizzas; hot dog sandwiches; meat pies; ice cream; preparations made from cereals, namely, cereal-based snack bars; sushi; ravioli; instant confectionery mixes, namely, cappuccino mixes, hot chocolate mixes and biscuit mixes; crepes; pasta sauce; biscuits; cookies in class 030.<br><br>For: Beer; fruit-flavored carbonated drinks; fruit juices; vegetable juices; extracts of hops for making beer; whey beverages in class 032.<br><br>For: Entertainment services, namely, providing on-line video games and on-line computer games; organization, production and presentation of video and computer game contests and tournaments in class 041. |
| 1,566,116 | SEGA | Nov. 14, 1989 | For: Video game attachments for television sets, namely, video game control sticks, video game programs recorded on integrated circuits in the form of cartridges and cards in class 028. |
| 3,245,697 | SEGA | May 29, 2007 | For: T-shirts; shirts in class 025. |

| 2,315,166 | SEGA | Feb. 8, 2000 | For: Video game machines for use with televisions; electronic gaming machines; video game software; computer game software in class 009. |
| 3,491,509 | DREAMCAST | Aug. 26, 2008 | For: Video game software, computer game programs in class 009. |
| 1,690,329 | GENESIS | June 2, 1992 | For: Video output game machines; software for video output game machines; attachments for video output game machines; namely, joystick controllers and joypad controllers; and carrying cases and storage containers for the foregoing in class 028. |

14.     The U.S. registrations for the Sega Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Sega Trademarks constitute *prima facie* evidence of their validity and of Sega's exclusive right to use the Sega Trademarks pursuant to 15 U.S.C. § 1057(b).  True and correct copies of the United States Registration Certificates for the Sega Trademarks are attached hereto as **Exhibit 1**.

15.     The Sega Trademarks are exclusive to Sega and are displayed extensively on Sega Products and in marketing and promotional materials.  The Sega Trademarks are also distinctive when applied to Sega Products, signifying to the purchaser that the products come from Sega and are manufactured to Sega's quality standards.  Whether Sega manufactures the products itself or contracts with others to do so, Sega has ensured that its products bearing the Sega Trademarks are manufactured to the highest quality standards.

16.     The Sega Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned.  The innovative marketing and product designs of Sega Products have enabled the Sega Brand to achieve widespread recognition

and fame and have made the Sega Trademarks some of the most well-known marks in the video game and entertainment industries. The widespread fame, outstanding reputation, and significant goodwill associated with the Sega Brand have made the Sega Trademarks valuable assets of Sega.

17.     The Sega Trademarks have been the subject of substantial and continuous marketing and promotion by Sega. Sega has and continues to market and promote the Sega Trademarks in the industry and to consumers through traditional print media, authorized retailers, the official Sega website shop.sega.com, social media sites, and point of sale material.

18.     Sega has expended substantial time, money, and other resources in advertising and promoting the Sega Trademarks. Specifically, Sega has expended substantial resources in advertising, promoting, and marketing featuring the Sega Trademarks. Sega Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Sega Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Sega. Sega Products have become among the most popular of their kind in the world. The Sega Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Sega Trademarks is of immeasurable value to Sega.

19.     Sega Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Sega Brand.

20.     The Sega Copyrighted Works are registered with the United States Copyright Office. A true and correct copy of the record from the U.S. Copyright Office website for the above-referenced Sega Copyrighted Works, in addition to the records for all Sega Copyrighted Works obtained from the U.S. Copyright Office website, is attached hereto as **Exhibit 2**. The Sega Copyrighted Works embody the distinctive characters found in paragraph 6 above.

21.     Among the exclusive rights granted to Sega under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Sega Copyrighted Works to the public.

22.     Since first publication, the Sega Copyrighted Works have been used on Sega Products and are featured on Sega's official websites.

23.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Sega.  On information and belief, Defendants reside and/or operate in primarily Asian countries or other foreign jurisdictions and redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

24.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network.  If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### IV.     DEFENDANT'S UNLAWFUL CONDUCT

25.     The success of the Sega Brand has resulted in significant counterfeiting of the Sega Trademarks and infringement of the Sega Copyrighted Works.  Because of this, Sega has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps.  Recently, Sega has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace

platforms like Alibaba Group Holding Ltd. ("Alibaba"), Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), Walmart, Inc. ("Walmart") and ContextLogic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

26.     Because the infringing products do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

27.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland

Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders."  Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts.  **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 5** at p. 39.  Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]."  **Exhibit 4** at 186-187.  Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order."  *Id.* at p. 161.

28.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, offer for sale and/or sell Unauthorized Products to residents of Illinois.

29.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller

Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Sega has not licensed or authorized Defendants to use any of the Sega Trademarks and/or to copy or distribute the Sega Copyrighted Works, and none of the Defendants are authorized retailers of Sega Products.

30.     Many Defendants also deceive unknowing consumers by using the Sega Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for Sega Products. Other e-commerce stores operating under Seller Aliases omit using the Sega Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Sega Products.

31.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

32.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

33.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

34. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and through websites such as sellerdefense.cn, ikjzd.com, kaidianyo.com, and kuajingvs.com. These websites provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. The websites also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

35. Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite plaintiffs' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

36.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Sega, have jointly and severally, knowingly, and willfully used and continue to use the Sega Trademarks and copies of the Sega Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

37.     Defendants' unauthorized use of the Sega Trademarks and/or Sega Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Sega.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

38.     Sega hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Sega Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The Sega Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Sega Products offered, sold, or marketed under the Sega Trademarks.

40.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Sega Trademarks without Sega's permission.

41.     Sega's United States registrations for the Sega Trademarks are in full force and effect.  Upon information and belief, Defendants have knowledge of Sega's rights in the Sega Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Sega Trademarks. Defendants' willful, intentional, and unauthorized use of the Sega Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

42.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43.     Sega has no adequate remedy at law, and if Defendants' actions are not enjoined, Sega will continue to suffer irreparable harm to its reputation and the goodwill of the Sega Trademarks.

44.     The injuries and damages sustained by Sega have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

45.     Sega hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Sega or the origin, sponsorship, or approval of the Unauthorized Products by Sega.

47.     By using the Sega Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

48.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

49.     Sega has no remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Sega Brand if Defendants' actions are not enjoined.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 and 501)**

50.     Sega hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

51.     The Sega Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

52.     Sega is the owner of the Sega Copyrighted Works.  Sega has complied with the registration requirements of 17 U.S.C. § 411(a) for the Sega Copyrighted Works.  The Sega Copyrighted Works are protected by copyright registration numbers which were duly issued to Sega by the United States Copyright Office. At all relevant times, Sega has been, and still is, the owner of all rights, title, and interest in the Sega Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

53.     The Sega Copyrighted Works are published on the internet and available to Defendants online.  As such, Defendants had access to the Sega Copyrighted Works via the internet.

54.     Without authorization from Sega, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Sega Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Sega Copyrighted Works.  Such conduct infringes and continues to infringe the Sega Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

55.     Defendants reap the benefits of the unauthorized copying and distribution of the Sega Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

56.     Defendants have unlawfully appropriated Sega's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Sega Copyrighted Works.

57.     On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Sega's rights.

58.     The Defendants, by their actions, have damaged Sega in an amount to be determined at trial.

59.     Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Sega great and irreparable injury that cannot fully be compensated or measured in money.  Sega has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Sega is entitled to a preliminary and permanent injunction prohibiting further infringement of the Sega Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Sega prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.  using the Sega Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Sega Product or is not authorized by Sega to be sold in connection with the Sega Trademarks;

      b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Sega Copyrighted Works in any manner without the express authorization of Sega;

      c.  passing off, inducing, or enabling others to sell or pass off any products as Sega Products or any other product produced by Sega, that is not Sega's or not produced under the authorization, control, or supervision of Sega and approved by Sega for sale under the Sega Trademarks and/or Sega Copyrighted Works;

      d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Sega, or are sponsored by, approved by, or otherwise connected with Sega;

      e.  further infringing the Sega Trademarks and/or Sega Copyrighted Works and damaging Sega's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Sega, nor authorized by Sega to be sold or offered for sale, and which bear any of the Sega Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Sega Copyrighted Works;

2) Entry of an Order that, upon Sega's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like Alibaba, Amazon, eBay, Walmart and Wish (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Sega Trademarks and/or Sega Copyrighted Works;

3) That Defendants account for and pay to Sega all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Sega Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Sega be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Sega Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Sega Copyrighted Works, Sega is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Sega's election prior to any final judgment being entered, Sega is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Sega is further entitled to recover its attorney's fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 24th day of April 2023.            Respectfully submitted,

/s/ Martin F. Trainor
Martin F. Trainor
Sameeul Haque
TME Law, P.C.
3339 S. Union Avenue
Chicago, Illinois 60616
708.475.1127
martin@tme-law.com
sameeul@tme-law.com

*Counsel for Plaintiffs Sega Corporation and Sega of America, Inc.*